THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

SANTOS ANDUJAR,

                    Plaintiff,

        v.                              Civil No. 14-7696 (JS)

GENERAL NUTRITION CORPORATION,

                    Defendant.

## OPINION

This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 34] filed by defendant General Nutrition Corporation. Defendant seeks summary judgment on plaintiff Santos Andujar's age discrimination claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD"). The Court received plaintiff's opposition [Doc. No. 36] and defendant's reply [Doc. No. 37].[1] Pursuant to 28 U.S.C. § 636(c), the parties

---

[1] The Court is also in receipt of defendant's January 12, 2017 letter [Doc. No. 38] attaching a recent Opinion by the Honorable Freda L. Wolfson, U.S.D.J, in Bals v. Trump Nat'l Gold Club Colts Neck LLC, C.A. No. 14-6055 (FLW/DEA), 2016 WL 7325475 (D.N.J. Dec. 16, 2016). As plaintiff correctly asserts in his response [Doc. No. 39], defendant's letter filed without leave of Court constitutes an impermissible sur-reply pursuant to L. Civ. R. 7.1(d)(6). Tucker v. Sebelius, C.A. No. 07-2230 (RBK), 2010 WL 2761525, at *5 n.3 (D.N.J. July 12, 2010). While the Court does not look favorably upon defendant's failure to comply with L. Civ. R. 7.1(d)(6), the Court will exercise its discretion to consider defendant's sur-reply for the sake of completeness. See Westmont Dev. Grp., LLC v. Twp. of Haddon, 625 F. Supp. 2d 178, 190 n.24

consented to the jurisdiction of this Court to hear the case. [Doc. No. 10]. The Court exercises its discretion to decide defendant's motion without oral argument. <u>See</u> Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed defendant's motion is DENIED.

This Opinion addresses whether plaintiff makes out a viable claim under the LAD for age discrimination in employment. Plaintiff's claim arises out of his termination as a store manager at one of defendant's stores in 2014. The crux of plaintiff's claim is that defendant wrongfully terminated him based on his age in violation of the LAD.

## I.   Background

Plaintiff began his employment with defendant in 1999 as a sales associate.[2] Plaintiff was promoted to the position of store

_____

(D.N.J. 2009), <u>aff'd sub nom.</u>, <u>Westmont Dev. Grp. v. Twp. Of Haddon</u>, 373 Fed. Appx. 310 (3d Cir. 2010).

[2] The Court will start this Opinion by providing a summary of the background facts. As required in the present context, plaintiff will be given the benefit of all reasonable inferences from the facts of record and the evidence will be viewed in the light most favorable to plaintiff. <u>See</u> <u>Startzell v. City of Phila.</u>, 533 F.3d 183, 192 (3d Cir. 2008) (citations omitted).

The Court also notes that defendant's Statement of Undisputed Facts ("SOF") [Doc. No. 34-1] is incorporated in its opening brief in violation of L. Civ. R. 56.1(a). Rule 56.1(a) provides in pertinent part: "Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law." Such deficiencies in format may be excused if the purpose of the rule to narrow the issues before the Court in deciding a motion for summary judgment is met. The Court will excuse defendant's failure and accept defendant's statement included as part of its opening brief; however, defendant is advised that it "must strictly comply with the Local Civil Rules

manager in 2001 and kept the position until his termination on February 26, 2014 at age 58. During his employment with defendant, plaintiff received numerous awards and accolades from the company. For instance, Christian Gosseaux ("Gosseaux")[3] testified that plaintiff received a "Sales Leader Award" and "Certificate of Appreciation" for his sales performance in 2013. Pl.'s SOF ¶¶ 5, 11 [Doc. No. 36-2]; Pl.'s Exs. E, F [Doc. No. 36-4]; see also Gosseaux Deposition Transcript ("Gosseaux Dep.") 37:2-18, 43:21-25 [Doc. No. 34-11]. Plaintiff also received a letter from defendant's Chief Executive Officer dated February 26, 2014, the date of his termination, acknowledging that plaintiff's efforts and hard work contributed to defendant's success in 2013. In recognition of plaintiff's achievements, defendant promised a "discretionary match" to plaintiff's 2013 401(k) contribution. Pl.'s SOF ¶ 14; see also Pl.'s Ex. G. Further, defendant classified each store as "A, B, C or D" based on sales, profits and store growth. During plaintiff's employment as a store manager, he improved his store's classification from "D" to "B" prior to being terminated. Pl.'s SOF ¶ 28.

---

in connection with any future submissions to this Court." Safar v. Cox Enters., Inc., C.A. No. 10-3069 (JLL), 2013 WL 4084636, at *1 n.1 (D.N.J. Aug. 12, 2013).

[3] Gosseaux was defendant's regional sales director and plaintiff's supervisor who plaintiff references as "Goose." See Pl.'s SOF ¶ 1 [Doc. No. 36-2].

Plaintiff was also evaluated annually for his performance as a store manager from 2002 to 2014 through defendant's Performance Evaluation Process ("PEP"). Def.'s SOF ¶¶ 7-9; see also Def.'s Exs. 1-12 [Doc. Nos. 37-4, 37-5]; Def.'s Ex. H [Doc. No. 34-5]. According to defendant, PEP scores below 300 indicate that an "employee is not meeting performance expectations and as a result, the employee may be disciplined and terminated for poor performance." Def.'s SOF ¶ 7. The record indicates plaintiff received PEP scores below 300 in 2006, 2008 and 2014.[4] See Def.'s Exs. 5, 7, H. However, Gosseaux acknowledged that in his experience of supervising 25-30 managers, any manager can have good and bad years, including himself. Gosseaux Dep. 38:3-39:6.

In addition to the PEP, each of defendant's stores is evaluated annually through an assessment known as Critical Point Audit ("CPA"). The passing score on a CPA is 90%. Def.'s SOF ¶ 10. The store managed by plaintiff received CPA scores of 88% in 2010, 68% in 2011 and 79% in 2012. Id. ¶¶ 11-13. According to defendant, as result of the three consecutive failing CPA scores, Gosseaux

---

[4] Defendant also asserts plaintiff received a PEP score of 299 in 2013. See Def.'s SOF ¶ 8. However, defendant's 2013 PEP evaluation for plaintiff indicates a score of 299.5 which defendant rounded-up to 300 as "Final Score Review." Def.'s Ex. 12. In light of defendant's own document and as required in the present context, the Court deems plaintiff's PEP score for 2013 to be 300. See Mullen v. New Jersey Steel Corp., 733 F. Supp. 1534, 1539 n.5 (D.N.J. 1990) (declining to follow the parties' arguments when "common sense and the document state otherwise").

issued a written warning to plaintiff on June 21, 2012. In particular, the warning specified that plaintiff failed to perform "Store Specific Cycle Counts" for 2010-2012 despite being directed to do so. In response, plaintiff acknowledged the written warning and responded in writing: "Will work on ALL problems." Id. ¶¶ 14-15; see also Def.'s Ex. L [Doc. No. 34-9]. However, plaintiff's store received a CPA score of 88% in 2013 and, as a result, Gosseaux placed plaintiff on the "Red Store Action Plan" on January 23, 2014. Def.'s SOF ¶¶ 16-17; see also Def.'s Ex. M [Doc. No. 34-9]. Approximately one month later, Gosseaux terminated plaintiff for failure to improve the performance of his store despite being placed on notice of the store's poor performance scores. Plaintiff was replaced by Nicholas Librizzi ("Librizzi") who was in his 20's in 2014. Def.'s SOF ¶¶ 20-21.

The parties' dispute largely centers on the "Red Store Action Plan" ("Plan"). The crux of plaintiff's argument is that he was treated differently than other store managers with sub-300 PEP scores because of his age. Plaintiff further argues that the passing score of 300 was determined subjectively and disputes the objective nature of defendant's performance evaluations. Pl.'s Opp'n at 5 [Doc. No. 36]. In support, plaintiff points to the Chart[5] listing the names, age and status of employment of other

---

[5] In response to plaintiff's July 12, 2016 letter application [Doc. No. 29], the Court Ordered defendant to produce all the

store managers in the same region as plaintiff with sub-300 PEP scores in 2011-2015. See Pl.'s Ex. D. The Chart indicates that the six store managers listed were all younger than plaintiff by at least ten years and none of them were placed on the Red Store Action Plan nor terminated within 30 days of receiving the evaluation. Id. According to the Red Store Action Plan issued to plaintiff and the blank standard form of the Plan, an employee subject to the Plan has 30 days to improve the store's performance or face disciplinary action including termination. See Pl.'s Exs. B, C.

Plaintiff disputes the assertion that the Plan was defendant's standard procedure when an employee receives a PEP score below 300. Pl.'s Opp'n at 4. In particular, plaintiff argues the 30-day reevaluation period in the Plan was unilaterally used by Gosseuax and deviated from defendant's policy of reevaluating an employee with a sub-300 PEP score in 60-90 days. Id. at 11; see also Pl.'s Exs. A, B. Plaintiff also points out Gosseaux included certain ageist language in the Plan, (e.g., "following old ways"

_____

information necessary to complete the Chart attached to plaintiff's application [Doc. No. 29-2]. The Chart lists the names, age and status of employment of six store managers in the same local region as plaintiff who received PEP scores below 300 in 2011-2015. The Court further Ordered defendant to confirm that the six store managers listed on the Chart are the only store managers who fit the above description. See July 19, 2016 Text Order [Doc. No. 31].

and "not growing with the times"), to characterize his performance.[6] According to plaintiff, this language demonstrates defendant's discriminatory motive in terminating his employment. Pl.'s Opp'n at 12.

Defendant does not dispute plaintiff was "proficient in his performance in sales"; however, it argues that sales performance is one of many factors used to evaluate a store manager's performance. Def.'s Reply at 3 [Doc. No. 37]. According to defendant, plaintiff "was not terminated solely on the basis of the Red Store Action Plan, but rather as a result of his lack of performance and failed store evaluations." Id. at 2. Defendant also disputes the alleged ageist nature of the language used by Gosseaux, arguing plaintiff misrepresents the statement by quoting selectively. Id. at 2-3. The crux of defendant's argument is that plaintiff was terminated for a legitimate, nondiscriminatory reason, i.e., plaintiff's failure to improve his performance as a store manager despite being on notice of his deficiencies. Def.'s Reply at 4-5.

On November 19, 2014, plaintiff filed suit in state court, alleging wrongful termination based on age discrimination under

---

[6] To be clear, the Court notes that the actual language in the Plan issued to plaintiff states, "it is not ok to just show up to work each day and do the same old things . . . must grow and perform to keep up with the company standards." Pl.'s Ex. C.

the LAD. On December 10, 2014, defendant removed this matter to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. See Notice of Removal [Doc. No. 1]. The Rule 16 conference was held on February 4, 2015 and defendant filed the instant motion at the conclusion of discovery.

## II. Discussion[7]

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.

---

[7] Defendant also requests the Court to strike plaintiff's claim for intentional infliction of emotional distress for failure to file an affidavit of merit. Mot. at 17-19 [Doc. No. 34-1]. Defendant is mistaken. Plaintiff did not plead a separate cause of action for intentional infliction of emotional distress. See generally Compl. [Doc. No. 1-2]. Damages for "emotional distress" are recoverable under the LAD. McKenna v. Pac. Rail Serv., 32 F.3d 820, 833 (3d Cir. 1994) (citations omitted); see also N.J.S.A. 10:5-3 ("The Legislature intends that [damages for emotional distress] be available to all persons protected by this act and this act shall be liberally construed in combination with other protections available under the laws of this State.").

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality of a fact turns on whether under the governing substantive law a dispute over the fact might have an effect on the outcome of the suit. Id. The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell, 533 F.3d at 192 (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id. at 256-57; Fed. R. Civ. P. 56(c)(1)(A). Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890-91

(3d Cir. 1992) (quoting <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992)).

**B. Age Discrimination Under LAD**

"The purpose of the LAD is to ban employment discrimination on the basis of certain enumerated attributes including, at issue here, age." <u>Bergen Commercial Bank v. Sisler</u>, 723 A.2d 944, 949 (N.J. 1999) (citation omitted); <u>see</u> <u>also</u> N.J.S.A. 10:5-12(a). LAD claims of employment discrimination based on age are assessed under the same three-step burden-shifting framework outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Sisler</u>, 723 A.2d at 954-55 ("This Court has adopted the <u>McDonnell Douglas</u> approach 'as a starting point' in analyzing claims under the LAD.") (citation omitted); <u>Kremp v. Wachovia Bank, N.A.</u>, 451 Fed. Appx. 151, 155 (3d Cir. 2011) ("Following the <u>McDonnell Douglas</u> framework in employment discrimination cases, New Jersey Law requires a three step inquiry in analyzing LAD claims.") (citations omitted).

Under the <u>McDonnell Douglas</u> framework, plaintiff has the initial burden of establishing a <u>prima</u> <u>facie</u> claim of age discrimination by showing that: (1) he was a member of a protected class;[8] (2) qualified for the position he held; (3) he suffered an

---

[8] While the LAD does not establish an age limit of forty or older like its federal counterpart (Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, <u>et</u> <u>seq.</u>), a plaintiff pursuing a LAD claim for age discrimination in employment must still demonstrate that he is a member of a protected class. <u>Sisler</u>, 723 A.2d at 958 ("Notwithstanding our conclusion that the LAD does

adverse employment action; and (4) he "ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." See Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300-01 (3d Cir. 2004); see also Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 167 (3d Cir. 2001) (noting that plaintiff may establish a prima facie case by direct or indirect evidence, and that plaintiff must present indirect evidence "sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case.") (citations omitted). As to the last element for a prima facie case under the LAD, "[t]he focal question is not necessarily how old or young the claimant or his replacement was, but rather whether the claimant's age, in any significant way, 'made a difference' in the treatment he was accorded by his employer." Arenas v. L'Oreal USA Prod., Inc., 790 F. Supp. 2d 230, 237 (D.N.J. 2011), aff'd, 461 Fed. Appx. 131 (3d Cir. 2012) (citations omitted).

Once plaintiff satisfies the initial burden of establishing a prima facie case of age discrimination, the burden shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell Douglas, 441 U.S. at 802. "Once the employer answers its relatively light burden by

_____

not foreclose an action for discrimination based on youth, that older workers form the presumptive protected class under the anti-age-discrimination provisions of the LAD is clear.").

articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); see also Bowles v. City of Camden, 993 F. Supp. 255, 262 (D.N.J. 1998) ("Pretext is a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs; in essence, pretext is a cover-up for a discriminatory purpose.") (internal quotation marks and citation omitted). Plaintiff may demonstrate defendant's articulated reason is pretextual by pointing to some evidence, direct or circumstantial, that would lead a factfinder to either disbelieve defendant's articulated reason or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action. See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015).

In attempting to show defendant's articulated reason is pretextual, plaintiff may not merely assert that defendant's decision was "wrong or mistaken." This is true because the ultimate issue is whether defendant acted with "discriminatory animus" in making the decision. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 283 (3d Cir. 2001). If plaintiff can satisfy his burden of demonstrating pretext, then he need not present

"affirmative evidence of discrimination beyond [his] prima facie showing if a rational factfinder could conclude from the evidence of pretext that [defendant's] actions were discriminatory." Id. (citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147 (2000)).

The Court will now proceed to discuss each step of the McDonnell Douglas burden-shifting framework.

## 1. **Prima Facie** Case

The Court begins its analysis by finding that plaintiff presents sufficient facts to establish a prima facie case of age discrimination pursuant to the LAD. As a preliminary matter, it is undisputed that plaintiff was 58-years-old when he was terminated by defendant and replaced with Librizzi who was in his 20's.[9] Therefore, plaintiff has established he is a member of a protected class under the LAD. See Sisler, 723 A.2d at 958 (noting that older workers form a presumptive protected class under the LAD).

---

[9] While defendant concedes that plaintiff was replaced by someone younger (Librizzi), defendant attempts to discredit plaintiff's prima facie case by asserting Librizzi was also subsequently terminated from the position for poor performance. See Def.'s Reply at 2. The Court rejects defendant's argument. The relevant consideration at the first step of the McDonnell Douglas framework is whether plaintiff was replaced by a "person sufficiently younger to permit an inference of age discrimination." See Duffy, 265 F.3d at 167. Whether the replacement employee was subsequently terminated for poor performance is not relevant to plaintiff's prima facie case. Defendant cites no case law to support its argument.

Moreover, plaintiff has established he suffered an adverse employment action and he was ultimately replaced by someone sufficiently younger to raise the inference that his age made a difference. See Monaco, 359 F.3d at 300-01; see also Arenas, 790 F. Supp. 2d at 237-38 (noting that under the more flexible standard pursuant to the LAD, plaintiff need not show that he was replaced by someone younger but rather a "logical basis on which to find that a plaintiff's termination was significantly affected by his or her age"). Accordingly, the only issue left for the Court to determine at the first step of the McDonnell Douglas framework is whether plaintiff was qualified as a store manager, i.e., whether he was actually performing his job prior to his termination. See Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1135-36, 1143 (N.J. 2005) ("All that is necessary is that the plaintiff produce evidence showing that [he] was actually performing the job prior to the termination.").

In determining whether plaintiff was performing at his job, plaintiff's qualification for the position he held is judged by objective standards, e.g., education and experience. See Red v. Potter, 211 Fed. Appx. 82, 84 (3d Cir. 2006) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995)). At the prima facie stage, plaintiff need only point to evidence that he was actually performing his job prior to his termination to raise an inference that plaintiff's claim is plausible. Zive, 867 A.2d at

1143 ("Because performance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test, they do not come into play as part . . . of the prima facie case.") (citation omitted); see also Thomasian v. New Jersey Inst. of Tech., C.A. No. 08-2218 (FSH), 2010 WL 1032653, at *4 n.16 (D.N.J. Mar. 16, 2010) (giving the plaintiff the benefit of the doubt at the summary judgment stage and moving past the prima facie step upon a showing that he was actually performing his job prior to his termination despite the record showing plaintiff was repeatedly admonished for his job performance).

In attempting to demonstrate his prima facie case, plaintiff points to the awards he received, his increase in compensation and the positive comments regarding his performance. Pl.'s Opp'n at 10; see also Pl.'s Exs. E-H. While defendant disputes these accolades are reflective of plaintiff's performance as a store manager and, thus, irrelevant in deciding defendant's motion, plaintiff will be given all reasonable inferences as the Court is required to do in the present context. Startzell, 533 F.3d at 192 (citation omitted).

Defendant points to plaintiff's lack of performance as a store manager as reflected in plaintiff's annual PEP and CPA reviews. The Court declines to impose an arduous burden on plaintiff at the initial stage of the McDonnell Douglas framework. See Sluka v. Landau Uniforms, Inc., 383 F. Supp. 2d 649, 657 (D.N.J. 2005) ("At

the prima facie stage 'even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has . . . performed in the position up to the time of termination, the slight burden of the [prong] is satisfied.'") (quoting Zive, 867 A.2d at 1143). Further, the Court notes that the February 26, 2014 letter from defendant's CEO does not limit defendant's recognition of plaintiff's performance to sales. The letter recognizes "all of [plaintiff's] hard work in 2013." See Pl.'s Ex. G. Accordingly, the Court finds that plaintiff has made a prima facie showing he was qualified for the position, i.e., actually performing the duties of a store manager. Plaintiff has demonstrated more than a mere showing of a "continued employment." See Zive, 867 A.2d at 1144 ("Simple proof of continued employment is not enough.").

Having found that plaintiff has satisfied the initial burden of establishing a prima facie case of age discrimination and, thus, creating an inference of unlawful discrimination, the Court will proceed to the next step in the McDonnell Douglas burden-shifting framework, i.e., articulated legitimate, nondiscriminatory reason for termination. See Willis, 808 F.3d at 644 (internal quotation marks and citation omitted).

## 2. Articulated Legitimate, Nondiscriminatory Reason for Termination

The Court finds that defendant has satisfied its "relatively light burden" of articulating a legitimate, nondiscriminatory reason for terminating plaintiff. Fuentes, 32 F.3d at 763. Defendant "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). The ultimate burden of proving age discrimination always remains with the plaintiff. Id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981)).

Defendant argues its decision to terminate plaintiff was based on plaintiff's poor performance as a store manager. In support, defendant points to the warning notice provided to plaintiff in 2012 (Def.'s Ex. L) and plaintiff's PEP scores in 2006, 2008 and 2014 (Def.'s Exs. 5, 7, H). Defendant also points to plaintiff's written acknowledgment of the 2012 warning and his promise to work on all problems. In addition, defendant points to the Red Store Action Plan issued to plaintiff in January 2014 (Def.'s Ex. M). Def.'s Reply at 7. Based on this evidence, the Court finds that defendant has produced sufficient evidence "that will allow the factfinder to determine that the decision [to

terminate] was made for nondiscriminatory reasons." _Willis_, 808 F.3d at 644 (citing _Fuentes_, 32 F.3d at 763). Having found that defendant has satisfied its burden of articulating a legitimate, nondiscriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to demonstrate defendant's explanation is pretextual. _Bals_, 2016 WL 7325475, at *10 (citing _Fuentes_, 32 F.3d at 763; _Willis_, 808 F.3d at 644).

### 3. Pretext for Age Discrimination

The Court finds there is a genuine issue of material fact precluding granting summary judgment in favor of defendant. This is so because plaintiff has presented sufficient evidence for a reasonable factfinder to find that defendant's articulated legitimate, nondiscriminatory reason for terminating plaintiff is a pretext.

In order to satisfy his burden of persuasion at the last step of the _McDonnell Douglas_ framework, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." _Fuentes_, 32 F.3d at 764 (citations omitted). Stated differently, "to avoid summary judgment, [plaintiff's] evidence rebutting [defendant's] proffered legitimate reasons must allow a factfinder reasonably to infer

that [they] were either a post hoc fabrication or otherwise did not actually motivate [plaintiff's termination]." Id. (citations omitted).

In opposing the present motion, plaintiff argues defendant's criticism of plaintiff's poor performance as a store manager is "unworthy of credence" for several reasons. First, plaintiff disputes the Red Store Action Plan, which includes ageist language added by Gosseaux. The ageist language states it is "not ok to . . . do the same old thing" and plaintiff "must grow and perform to keep up with the company." Pl.'s Ex. C. Second, plaintiff points out Gosseaux fired him after only 30 days which is a deviation from defendant's established policy of providing a 60-90 day time period for performance reevaluations. Pl.'s Opp'n at 11. Plaintiff directs the Court's attention to the 30-day reevaluation period provided in the Plan and the 60-90 day reevaluation period provided in the "Performance Evaluation Process Overview." See Pl.'s Exs. A, B. Third, plaintiff points to the numerous accolades and recognitions he received from defendant for his job performance. See Pl.'s Exs. E, F, G. Four, plaintiff argues he was the only store manager in his area with a sub-300 PEP score who was subjected to the Red Store Action Plan, demonstrating the subjective nature of the PEP evaluations and the passing score of 300. See Pl.'s Ex. D; see also Pl.'s Opp'n at 11-12. Five, plaintiff points out he was the only store manager with a PEP score

less than 300 who was fired after being placed on the Plan and that he was the oldest store manager listed on the defendant's Chart. Pl.'s Ex. D. Six, plaintiff was replaced by an employee in his 20's. Pl.'s Opp'n at 4.

The crux of defendant's argument on the issue of pretext is that plaintiff simply disagrees with defendant's reason for his termination, plaintiff failed to offer any evidence that defendant's stated reason is pretextual, and plaintiff merely attempts to create a factual dispute where none exists. Def.'s Reply at 3, 7-8. Defendant concedes plaintiff was proficient in sales performance as indicated by various accolades plaintiff received. According to defendant, however, plaintiff's performance as a sales associate is not determinative because plaintiff's poor performance as a store manager, which includes tasks and duties beyond what is required of a sales associate, was the legitimate reason for plaintiff's termination.[10] Id. at 3-4.

---

[10] Defendant relies on Molnar v. Covidien LP, C.A. No. 13-5338 (WJM), 2016 WL 1597242, at *1 (D.N.J. Apr. 21, 2016), aff'd, C.A. No. 16-2537, 2017 WL 1405733 (3d Cir. Apr. 19, 2017), for the proposition that plaintiff "cannot establish pretext simply because he disagrees with the assessment criteria." Def.'s Reply at 11 (citing Molnar, 2016 WL 1597242, at *4). Defendant further relies on Molnar to argue that plaintiff fails to offer any evidence to show that his performance evaluations "were anything other than accurate." Id. Defendant also relies on Bals v. Trump Nat'l Golf Club Colts Neck LLC, C.A. No. 14-6055 (FLW/DEA), 2016 WL 7325475, at *1 (D.N.J. Dec. 16, 2016), for the same proposition. Def.'s Sur-reply at 3 [Doc. No. 38].
Defendant, however, ignores plaintiff's evidence summarized herein. This evidence allows the factfinder to reasonably

**i. Pretext – <u>Post</u> <u>Hoc</u> Fabrication**

In order to raise sufficient disbelief in defendant's articulated reason for terminating plaintiff, "the evidence must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." <u>Willis</u>, 808 F.3d at 644-45 (quoting <u>Fuentes</u>, 32 F.3d at 765). Plaintiff may not merely disagree with defendant's decision to terminate him as "wrong or mistaken" but must present sufficient evidence to raise the question whether the real reason for the termination was age discrimination. <u>Keller v. Orix Credit All., Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting <u>Carson v. Bethlehem Steel Corp.</u>, 82 F.3d 157, 159 (7th Cir. 1996)).

As noted, plaintiff points to the fact that he improved his store's performance from a "D" to a "B" classification. Plaintiff also points to the accolades he received for his performance in support of his claim that defendant was motivated by discriminatory

---

disbelieve defendant's articulated reason for terminating plaintiff or to find that defendant's discriminatory intent was the motivating or determinative factor for its decision. <u>Fuentes</u>, 32 F.3d at 764 ("We have stated that a plaintiff may avoid summary judgment by pointing to 'some' evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)."); <u>see</u> <u>also</u> <u>Abramson</u>, 260 F.3d at 283. Accordingly, the Court finds that defendant's reliance on <u>Molnar</u> and <u>Bals</u> is misplaced.

intent. More significantly, plaintiff disputes his PEP scores and the Red Store Action Plan. Plaintiff points to the Chart indicating there were six other store managers in 2011-2015 who had PEP scores below 300 but who were not subjected to the Plan. Nor were these similarly situated store managers terminated within 30-days of their performance review. Pl.'s Ex. D. The Court also notes the alleged ageist comments added by Gosseaux which appear in the Plan issued to plaintiff (Pl.'s Ex. C). Likewise, defendant's February 26, 2014 letter, which is dated the day of plaintiff's termination, recognizes that plaintiff's "efforts and hard" work contributed to defendant's successful year in 2013. The letter provides additional compensation for plaintiff's performance in 2013 and does not mention "sales" or "sales performance." Pl.'s Ex. G. Defendant disputes that plaintiff's accolades are relevant here because plaintiff's poor performance as a sales manager is the reason plaintiff was fired. Defendant also disputes the alleged ageist nature of the language Gosseaux added to the Plan, arguing plaintiff misrepresents the statement contained therein. Def.'s Reply at 2-3. The parties have a clear fact dispute as to plaintiff's job performance which precludes summary judgment.

Viewing the record and drawing all reasonable inferences in the light most favorable to plaintiff, the Court finds that plaintiff has done more than assert conclusory or self-serving denials of his poor performance as a store manager. See Slater v.

Susquehanna Cty., 465 Fed. Appx. 132, 137 (3d Cir. 2012) ("A reasonable jury could not conclude, from [the plaintiff's] testimony alone, that the defendants' legitimate reasons were implausible, inconsistent, incoherent, contradictory or otherwise a pretext for discharging her because of her age."). Plaintiff has presented sufficient evidence for a reasonable factfinder to disbelieve defendant's articulated reason of poor performance. In particular, the Court finds that plaintiff's evidence sufficiently indicates "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to create a question of fact sufficient to deny summary judgment. Fuentes, 32 F.3d at 764; see also Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 508 (3d Cir. 1996) ("[I]f the employer proffers a reason and the plaintiff can produce enough evidence to enable a reasonable factfinder to conclude that the proffered reason is false, plaintiff has earned the right to present his . . . case to the jury."); Robinson v. Armadillo Automation, Inc., C.A. No. A-5927-13T3, 2016 WL 3909575, at *6 (N.J. Super. Ct. App. Div. July 20, 2016) ("If plaintiff's proofs are believed at trial, reasonable jurors can readily disbelieve defendants' stated reasons for the adverse employment actions. Accordingly, defendants' summary judgment should have been denied.") (citing Zive, 867 A.2d at 1140).

Accordingly, the Court will deny defendant's motion for summary judgment. While the Court need not discuss the second

method of demonstrating pretext, _i.e.,_ that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action," the Court will do so for the sake of completeness.

### ii. Pretext – Motivating or Determinative Cause

In addition to presenting sufficient evidence to allow a reasonable factfinder to disbelieve defendant's stated reason for plaintiff's termination, the Court finds that plaintiff has presented sufficient evidence to allow a reasonable factfinder to believe that defendant was more likely than not motivated by a discriminatory reason. In demonstrating pretext this way, plaintiff may present three types of evidence: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." Willis, 808 F.3d at 645 (citations omitted).

In opposing the present motion, plaintiff points to the Chart demonstrating he was the only store manager in the region with a sub-300 PEP score who was subjected to the Red Store Action Plan. The Chart further shows the age of six other managers with sub-300 PEP scores in 2011-2015 to be between 25 to 47 years old, at least ten years younger than plaintiff. The Chart indicates that none of the six other managers were terminated within 30 days of

24

being evaluated. Pl.'s Ex. D. Plaintiff also points to the discrepancy between the 30-day reevaluation period contained in the Red Store Action Plan and the 60-90 day reevaluation period provided in "Performance Evaluation Process Overview." See Pl.'s Exs. A, B. In support of its motion, defendant repeats its argument that plaintiff fails to present any evidence demonstrating its articulated reason of poor performance for terminating plaintiff is a pretext.

Viewing the record and drawing all reasonable inferences in the light most favorable to plaintiff as required, the Court finds that plaintiff has met his burden of producing evidence that defendant treated "similarly situated, substantially younger individuals more favorably," i.e., the six younger store managers with sub-300 PEP scores who were not subjected to the Red Store Action Plan and who were not fired. Willis, 808 F.3d at 645. This evidence, if believed, allows a reasonable factfinder to believe that "an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Zive, 867 A.2d at 456 (quoting Fuentes, 32 F.3d at 764). Plaintiff must convince the factfinder at trial "that the [legitimate, nondiscriminatory] reason was false and that discrimination was the real reason." Fuentes, 32 F.3d at 763. To survive summary judgment, however, plaintiff need only point to "evidence sufficient[] to discredit . . . defendant's proffered

reasons, . . . plaintiff need not also come forward with additional evidence of discrimination beyond his . . . prima facie case." Fuentes, 32 F.3d at 764 (citing Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122-24 (7th Cir. 1994); Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993)). The Court finds that a fact question exists as to whether plaintiff has satisfied his burden of demonstrating that age discrimination was more likely than not a "motivating or determinative cause" of plaintiff's termination. Willis, 808 F.3d at 645 (quoting Fuentes, 32 F.3d at 764). This finding further supports the Court's denial of defendant's motion for summary judgment.

## III. Conclusion

In conclusion, genuine issues of material fact remain to be decided. Therefore, defendant's motion for summary judgment will be denied. An appropriate Order will be separately entered.[11]


/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: May 26th, 2017

---

[11] To be clear, the Court is not weighing in on the merits of the case. The Court is merely deciding that defendant's motion for summary judgment should be denied.