IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

SANTOS ANDUJAR,

                    Plaintiff,

        v.                                Civil No. 14-7696 (JS)

GENERAL NUTRITION CORPORATION,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiff's "Motion for Attorney's Fees, Costs, [Prejudgment Interest] and Negative Tax Consequences" [Doc. No. 67]. Also before the Court is defendant's Motion to Strike the Amended Reply Affidavit of Plaintiff's Counsel" [Doc. No. 81]. The Court received the parties' extensive opposition and supplemental submissions [Doc. Nos. 68, 75, 76, 78, 83, 84, 88, 89, 90, 92, 107 and 108] and held oral argument. For the reasons to be discussed, plaintiff's motion is granted in part and denied in part and defendant's motion is denied. The Court grants a statutory attorney fee of $127,215.00 (lodestar) plus an enhancement of 25% or $31,803.75, for a total attorney fee award of $159,018.75. The Court also awards costs in the amount of $1,823.80, prejudgment interest in the amount of $1,207.64, and negative tax consequences in an amount to be determined. The enforcement of this award is stayed

1

at least until the Third Circuit rules on defendant's pending appeal.

Background

The parties are familiar with the background of this matter so there is no need to set out a detailed summary. The Court incorporates by reference the background set forth in its February 28, 2018 Opinion denying defendant's motion for a new trial or in the alternative amending the judgment. 2018 WL 1087494 (D.N.J. Feb. 28, 2018). Briefly, plaintiff alleged he was terminated from his job as the Manager of a General Nutrition store on account of his age. On October 26, 2017, the jury returned a verdict in plaintiff's favor finding defendant violated the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff was awarded $123,926 in back pay, $75,000 in emotional distress damages and $60,000 in front pay damages, for a total damage award of $258,926. Judgment in this amount was entered on October 30, 2017. [Doc. No. 66]. On February 28, 2018, defendant's motion for a new trial or to amend the judgment was denied. [Doc. Nos. 85, 86]. Defendant appealed the decision to the Third Circuit where the appeal is pending.[1]

Plaintiff seeks an award of attorney's fees, costs and prejudgment interest. Plaintiff also seeks an award for the

---

[1] Despite the fact the case is on appeal to the Third Circuit, the Court still has discretion to decide this motion. West v. Keve, 721 F.2d 91, 95 n. 5 (3d Cir. 1983).

negative tax consequences resulting from the judgment. Plaintiff requests a lodestar of $130,500 in fees, plus an enhancement of 50%. Plaintiff also requests $1,823.90 in costs, $2,481.42 in prejudgment interest and $69,443.00 for negative tax consequences. Defendant asserts various objections to plaintiff's requests which will be discussed herein.

For present purposes it is important to discuss how plaintiff's counsel proposes to compute his final fee. Plaintiff's retainer agreement provides he is to be paid a contingency fee of 45% of the net recovery. At first plaintiff contended he was entitled to the full amount of his Court awarded fee plus his contingency fee. In other words, a dual fee recovery.[2] Plaintiff proposed to pay a 1/3 referral fee of his 45% net recovery to his referring attorney. In addition, plaintiff proposed to pay a 1/3 referral fee of the Court's fee award to the referring attorney.[3] Defendant did not object to

---

[2] Based on the jury's verdict, the computation of net recovery is $258,926.00 – $1,823.80 = $257,102.20. Counsel's 45% share is $115,695.99. If the proposed lodestar ($130,500) is added to this amount, counsel's fee totals $246,195.99. This total does not include counsel's proposed enhancement. Under this proposal plaintiff would only receive $141,406.21.

[3] To the extent defense counsel argues counsel's affidavits are inconsistent with representations made at oral argument, the Court accepts plaintiff's representations made on the record. Further, to be frank, the record is not entirely clear as to the referral fee to be paid. At oral argument the Court first understood the fee would be 1/3 of counsel's 45% contingency fee. See March 23, 2018 Oral Argument Transcript ("Tr.") at 6:4-11. However, later on counsel indicated he pays a referral fee of 1/3 of 33%. Id. at 14:10 to 25:25. The Court reads the

counsel's proposed dual recovery but argued this should be taken into account when determining whether a lodestar enhancement should be awarded and the percentage.[4]

After the Court questioned counsel's proposed dual recovery and asked for supplemental briefs on the issue, counsel

---

transcript to mean in personal injury cases the referral fee is 1/3 of 33%. Whether plaintiff's referral fee is 1/3 of 33% or 45% is immaterial to the Court's decision.

[4] The Court disagrees with plaintiff's counsel's recent statement that "there is a fundamental misunderstanding" as to how plaintiff initially proposed to calculate his attorney fee. See July 5, 2018 Letter Brief ("LB") at 1, Doc. No. 107. At oral argument the Court inquired how counsel intended to calculate his fee. Counsel unequivocally indicated he would receive 45% of the net jury award after costs were paid, plus 100% of the Court awarded fee.

> THE COURT: … It's correct that Mr. Andujar is not going to see a penny of whatever the Court awards in attorney's fees, right?
>
> MR. PESCATORE: True.

Tr. at 26: 12-14, Doc. No. 106; see also id. at 4:6-12:

> THE COURT: [I]f you'll indulge me, I'll hear your argument, but I just had a couple of questions that I wanted to get clarified first.
>
> Plaintiff, defendant I believe argues that under the retainer agreement you're going to get paid 45 percent of the net recovery of the verdict, plus whatever award this Court grants for the successful outcome in the case.
>
> Is that in fact correct?
>
> MR. PESCATORE: It is correct under the agreement as it's written.

submitted a new proposal to calculate his attorney fee. <u>See</u> Plaintiff's July 5, 2018 LB. Counsel now proposes that he is entitled to 45% of the jury award plus 45% of the attorney fee award. According to counsel, plaintiff will not only receive 55% of the jury award, but also "fifty-five cents (55¢) on every dollar awarded, including any award of attorney's fees and costs." <u>Id.</u> at 1.[5] Defendant opposes plaintiff's new computation as excessive. <u>See</u> July 17, 2018 LB, Doc. No. 108.

Discussion

The parties do not dispute that a party that prevails on a NJLAD claim is entitled to a reasonable attorney's fee award. N.J.S.A. 10:5-27.1. There also is no dispute that plaintiff is a prevailing party since plaintiff succeeded on a "significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." <u>P.N. v. Clementon Board of Education</u>, 442 F.3d 848, 855 (3d Cir. 2006)(citation and quotation omitted). In addition, the parties do not dispute the starting point in the attorney's fee analysis is to determine the lodestar amount. <u>Lanni v. New Jersey</u>, 259 F.3d 146, 149 (3d Cir 2001). The lodestar is computed by multiplying the reasonable hourly rate by the reasonable number of hours expended. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The

---

[5] Under this proposal, 45% of the jury verdict ($116,516.70) plus 45% of the proposed lodestar ($58,725.00) totals $175,241.70. Counsel proposes to add to this amount his 50% enhancement.

lodestar is presumptively reasonable but may require subsequent adjustment. <u>United Automobile Workers Local 259 Social Security Dept. v. Metro Auto Center</u>, 501 F.3d 283, 290 (3d Cir. 2007).

## 1. <u>Hourly Rate</u>

Plaintiff asks for an hourly rate of $450. The Court finds this rate is reasonable and appropriate in the case. A reasonable hourly rate is calculated according to the prevailing market rate in the community. <u>S.D. v. Manville Bd. of Educ.</u>, 989 F. Supp. 649, 656 (D.N.J. 1998). "This burden is normally addressed by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." <u>Id.</u> A court should assess the skill and experience of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking to recover attorney's fees has the initial burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." <u>Lanni</u>, 259 F.3d at 149.

Plaintiff's counsel's certification, affidavits and representations reveal he is an experienced and skilled

employment law litigator. Richard M. Pescatore, Esquire, has been admitted to the Bar for over 30 years and he has been a Certified Trial Attorney since the mid-1990's (Certification of Counsel ("Cert.") ¶4, Doc. No. 67-1). Counsel has handled hundreds of employment law cases. Amended Affidavit ("Am. Aff.") ¶6, Doc. No. 78. Further, counsel has submitted the affidavits of three (3) experienced South Jersey employment law litigators who attest to the fact $450 per hour is a reasonable hourly rate in the South Jersey legal community for an attorney of Mr. Pescatore's skill and experience. See Exhibit B to Plaintiff's Motion, Doc. Nos. 67-5, 68.[6] Based on plaintiff's submissions, the Court will award plaintiff's counsel an hourly rate of $450.00 per hour.

Defendant argues counsel's hourly fee should be rejected because counsel did not provide information concerning his skill, experience, reputation and employment experience. Defendant's Opposition Brief ("Opp.") at 6, Doc. No. 75. The Court disagrees. As noted, plaintiff's counsel's certification and affidavits attest to this information. Notably, defendant does not otherwise challenge plaintiff's $450.00 per hour fee. Accordingly, the Court rules that plaintiff's $450.00 per hour fee for the work done on this case is reasonable and appropriate.

---

[6] The three attorneys are Michelle J. Douglas, Kevin Costello and Allan Richardson.

2.    Reasonableness of Fees

The parties do not dispute plaintiff is entitled to a reasonable attorney's fee as a prevailing party in the case. As noted, the lodestar provides the starting point for determining a reasonable attorney's fee. Lanni, 259 F.3d at 149. The lodestar is calculated by multiplying a reasonable hourly rate by the number of hours the moving counsel reasonably billed for the litigation. Id. A district court may discount any hours that it deems unreasonable, including those considered to be "excessive, redundant, or otherwise unnecessary[.]" See Hensley, 461 U.S. at 433. Although the Court has substantial discretion to determine what constitutes a reasonable billing rate and reasonable hours, once the lodestar is determined it represents the presumptive reasonable fee. Lanni, 259 F.3d at 149.

After the lodestar amount is calculated a court has discretion to adjust the fee up or down based on a number of different factors. Id. at 151; Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). These factors include, but are not limited to: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship of the clients; and (12) awards in similar cases. <u>Hensley</u>, 461 at 429-30 n.3.

A plaintiff's fee petition must be specific enough to allow the court to determine if the hours claimed are unreasonable for the work performed. <u>Washington v. Phila. County Ct. of Common Pleas</u>, 89 F.3d 1031, 1037 (3d Cir. 1996). Nevertheless, exacting detail is not necessary: "a fee petition should include some fairly definite information as to the hours devoted to various general activities, <u>e.g.</u>, pretrial discovery, settlement negotiations…. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." <u>Id.</u> at 1037-38 (citation and quotation omitted). The time to prepare and present an application for fees is recoverable. <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 187 (3d Cir. 2001). The lodestar and <u>Hensley</u> reduction analysis applies to the claimed fees to prepare a fee petition. <u>Id.</u> at 188.

   3.   <u>Lodestar Analysis</u>

Plaintiff submitted two sets of time sheets documenting his time. The first set is attached to plaintiff's motion (Doc. No. 67, Exhibit A) and includes time from 3/17/14 to 11/6/17. The total requested lodestar is $111,150.00. The second set of time sheets is attached to plaintiff's supplemental affidavit (Doc. No. 88, Exhibit A) and includes time from 11/8/17 to 3/13/18. The total requested lodestar is $19,350.

Defendant challenges the reasonableness of plaintiff's fees in several general respects. Defendant's arguments are rejected. To the extent defendant argues this was a straightforward simple case, the Court disagrees. Although plaintiff and defense counsel have likely litigated more complex cases, the case was not routine. Discovery was contentious and the Court had to address and resolve challenging discovery disputes. In addition, plaintiff successfully opposed defendant's motion for summary judgment and participated in a three-day trial. To his credit, plaintiff's counsel (as did defense counsel) zealously represented his client. Mr. Andujar deserved nothing less. Plaintiff's counsel would have been shirking his professional responsibilities if he took "shortcuts."

In support of his fee application Mr. Pescatore submitted his detailed timesheets. After reviewing counsel's time entries in detail, the Court finds counsel's

time was well spent, reasonable and appropriate. Counsel will not be penalized because he runs a small office and does not have the benefit of a large staff of young attorneys. Under the circumstances, counsel's "hands on" approach to the litigation was reasonable, necessary and appropriate.

Although not clear, defendant seems to argue the sixteen (16) hours plaintiff's counsel spent to prepare for trial was excessive since counsel allegedly only presented "minimal testimony and evidence." Opp. at 8. This argument is rejected. The Court finds 16 hours is a reasonable expenditure of time given that plaintiff's counsel not only had to prepare his case, but he also had to prepare to rebut defendant's case. Defendant is fortunate plaintiff's counsel used his time wisely and only spent 16 hours to prepare for trial.

Defendant argues the Court should disallow hours spent on "purely clerical and administrative entry tasks[.]" Opp. at 9. The Court agrees. However, defendant does not support, other than by general arguments, his contention counsel spent time on clerical and administrative tasks. Defendant argues every time entry for .1 should be disallowed. Tr. at 17:10-15. ("[W]e did not parse every single record[.]"). In addition, defendant argues all time entries for .5 hours or under "indicate[ ] a routine or

ministerial task." Opp. at 9.[7] Instead of considering defendant's general objections to plaintiff's time entries, the Court has individually reviewed defendant's objections and plaintiff's time entries to determine if they are appropriate. The Court will not issue a <u>carte</u> <u>blanche</u> ruling that all time entries less than .5 should be disallowed. Defendant identified its objections by striking out what it deemed administrative work. <u>See</u> Opp., Exhibit D.

Almost all of defendant's objections are off base. It is plain to the Court that not every time entry of .5 or lower is objectionable. For example, it is appropriate to compensate plaintiff for his initial phone call from his referring attorney (3/17/14 - .5), receipt of correspondence from client (3/21/14 - .2) and preparing letters to defendant (3/25/14 - .3, 4/16/14 - .3). Many of counsel's .1 and .2 time entries are for the receipt of correspondence and communications from the Court. Plaintiff's counsel should be compensated for this time. This task is not appropriately done by clerical staff.

As to plaintiff's request for fees through November 6, 2017, the Court has thoroughly reviewed defendant's

---

[7] Defendant argues these time entries total 112.3 hours and do not warrant payment at $450 per hour. <u>Id.</u> According to defendant, plaintiff's counsel only spent 112.30 hours on substantive work. <u>Id.</u>

individual objections to plaintiff's time entries of .5 or less. The Court did not identify any time entries that are objectionable. Plaintiff's counsel's "hands on" approach to the case was appropriate. However, the Court will deduct the 6.5 hours ($2,925.00) counsel estimated it would take to prepare his application for fees. The actual time counsel spent on counsel's fee application is included in the time sheets attached to counsel's supplemental affidavit.

Defendant argues the 12 hours counsel spent to oppose defendant's dispositive motion was excessive. Id. at 10. The Court disagrees and rules that plaintiff's counsel's time was well spent. Thus, the Court approves plaintiff's lodestar application for $108,225.00 ($111,150.00 - $2,925.00) in fees through November 6, 2017.

In addition to the lodestar through November 6, 2017, plaintiff also seeks a fee award for the time spent addressing his fee motion and other work performed from 11/7/17 to 3/13/18. As already noted, the time spent to prepare a fee petition is recoverable. So too is the time plaintiff spent to oppose defendant's post-trial motion. These additional fees are set forth in Mr. Pescatore's supplemental affidavit. Counsel requests reimbursement for an additional 43 hours or a total lodestar of $19,350. The Court reviewed plaintiff's time entries and finds that the

.2 time entries on 12/8/17 and 12/13/17 should not be reimbursed because the time was spent on the administrative/clerical task of filing William Martini's affidavits. Thus, only 42.2 additional hours or $18,990.00 in additional fees is awarded.

For the foregoing reasons the Court finds that the appropriate lodestar is $108,225.00 plus $18,990.00 or $127,215.00. The Court also finds the lodestar is reasonable and will not be increased or decreased based on the Hensley, supra, factors.

4. Calculation of Plaintiff's Attorney's Fee

Under New Jersey law a lawyer's fee must be reasonable. Rule of Professional Conduct ("RPC") 1.5(a); see also A.W. by B.W. v. Mount Holly Twp. Bd. of Educ., 453 N.J. Super. 110, 121 (App. Div. 2018)(even when a plaintiff applies for fee shifting the fee award must be reasonable). Further, in the first instance counsel's fee or retainer agreement must be examined to determine how his fee should be calculated. Starkey v. Estate of Nicolaysen, 340 N.J. Super. 104, 119-20 (App. Div. 2001), aff'd as modified 172 N.J. 60 (2002)(the purpose of a written fee agreement "is to memorialize the agreement as to quantum of the fee"). Here, plaintiff initially proposed that he receive his 45% contingency fee or $115,695.99, plus his Court-awarded lodestar of $127,215.00. These two amounts total

$242,910.99.[8] Under plaintiff's new calculation plaintiff proposes he receive 45% of the total of the judgment plus the Court awarded fee. These two amounts total $386,141 ($258,926 plus $127,215). Counsel's 45% share of this total is $173,763.45.[9] If the proposed 50% enhancement of the Court awarded fee is added to this amount, counsel would receive approximately $237,000.00 in fees. Under counsel's new proposal, the net amount payable to plaintiff, exclusive of interest and negative tax consequences, is only approximately $210,000.[10]

The Court rejects counsel's proposed fee calculation as inconsistent with plaintiff's written fee agreement and the applicable case law. Plaintiff's fee agreement states as follows:

> Net recovery is the total recovered on your behalf, exclusive of attorney fees, minus costs and expenses…. The fee will be as follows: 45% attorney fees, computed upon net recovery or $450.00 hourly rate which ever is greater. Law firm shall be entitled to, as an additional fee notwithstanding the above, any increase in fees or enhancements allowed by the court.

Doc. No. 67-8. The agreement states plaintiff is entitled to 45% of the net recovery or the $450.00 hourly rate, whichever is higher. The net recovery is the total recovered

---

[8] This total does not include plaintiff's proposed enhancement.
[9] As noted, counsel asks for a 50% enhancement of the Court awarded fees or the sum of $63,607.50.
[10] The total does not include an amount for interest and negative tax consequences.

on behalf of plaintiff, minus costs. The amount recovered on plaintiff's behalf is the jury verdict, not the jury verdict plus the Court awarded fees. The agreement, therefore, provides that counsel's attorney fee is the higher of the 45% contingency fee on the net jury verdict, or the Court awarded fee.[11]

The Court rejects the argument that when plaintiff's fee agreement refers to the "total recovered on [plaintiff's] behalf" it refers to the jury award plus the Court awarded fee and negative tax consequences. Counsel drafted the fee agreement. If this is what he intended it should have been specifically stated. Cohen v. Radio-Electronics Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 156 (1996)(any ambiguity in a fee agreement will be construed in favor of the client). Indeed, plaintiff's fee agreement specifically provides that the net recovery is "exclusive of attorney's fees."

---

[11] A dual recovery is not necessarily prohibited. As noted in Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 359 (1995), "statutory-fee awards and fees payable under contingent fee agreements are distinct and independent concepts"; accord Venegas v. Mitchell, 495 U.S. 82 (1990). Further, in U.S. v. Cooper Health System, 940 F. Supp. 2d 208, 214 (D.N.J. 2013), the Court held that a plaintiff in a False Claims Act case could receive statutory and contingency fees. The Court wrote: "no New Jersey law or ethical rule prohibits a fee structure wherein an attorney receives both a contingency fee and statutory fee." Id. at 222.

Further, counsel has not cited a single instance where a contingent fee included a percentage of the Court awarded fees.[12] On the other hand, defendant has cited persuasive case law to the contrary. See <u>Sullivan v. Crown Paper Bd. Co., Inc.</u>, 719 F.2d 667, 669-70 (3d Cir. 1983)(holding attorney entitled only to "recovery of the contingency fee amount or the statutory fee, whichever is greater"). "[A]bsent an explicit agreement to the contrary, statutory fees are not considered part of the total recovery for purposes of determining the contingency fee, and counsel is generally entitled to the greater of the two." <u>Albunio v. City of New York</u>, 11 N.E. 3d 1104 (N.Y. 2014); <u>see also</u> <u>Lowe v. Pate Stevedoring Co.</u>, 595 F.2d 256, 257 (5th Cir. 1979)(holding that counsel's fee was limited to the statutory award because the fee agreement did not specifically provide for the recovery of a "fee on a fee"); "Unless otherwise agreed to … fee awards are deducted from, rather than added to, the sum divided in the determination of the contingency fee." <u>Bates v. Kugenko</u>, 100 F.3d 961 (9th Cir. 1996). This is to "prevent windfall recoveries by the

---

[12] <u>But</u> <u>see</u> <u>Zarcone v. Perry</u>, 581 F.2d 1039 (2d Cir. 1978), <u>cert. den.</u> 439 U.S. 1072 (1979). This decision is inapposite because the case involved a civil rights claim, "of broad significance, prosecuted on behalf of a large class, and the prospective monetary award, if the suit was successful, would be modest in relation to the time, effort and skill required of counsel." <u>Sullivan</u>, <u>supra</u>, 719 F.3d at 670 (quoting <u>Zarcone</u>, 581 F.2d at 1044)(internal quotation marks omitted).

attorneys of civil rights plaintiffs." Id. (citation and quotation omitted).

The cited cases stand for the proposition, adopted by this Court, that unless a fee agreement specifically refers to a statutory fee award, counsel may receive either the agreed upon contingency fee based upon the jury award or the statutory award, whichever is greater. Counsel may not, as is requested here, receive a portion of both. Since the Court awarded fee is $127,215, and counsel's 45% contingency fee of the net jury award is $115,695.99, counsel shall be paid the higher statutory amount.

　　5. Enhancement

In addition to the lodestar amount, plaintiff asks for an enhancement of 50% pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995). The Supreme Court in Rendine stated as follows:

> We hold that the trial court, after having carefully established the amount of the lodestar fee, should consider whether to increase that fee to reflect the risk of non-payment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome ... we have concluded that a counsel fee awarded under a fee shifting statute cannot be "reasonable" unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of the result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.

Id. at 337-38. The Supreme Court also wrote:

> We conclude that contingency enhancements in fee shifting cases ordinarily should range between five and fifty percent of the lodestar fee, with the

> enhancement in typical contingency cases ranging
> between twenty and thirty-five percent of the
> lodestar.

Id. at 343. Whether to grant a fee enhancement is committed to the sound discretion of the trial court. Gallo v. Salesian Soc., Inc., 290 N.J. Super 616, 657-60 (App. Div. 1996).

When determining and calculating a fee enhancement, the court should consider the result achieved, the risks involved, and the relative likelihood of success in the undertaking. Furst v. Einstein Moomjy, 182 N.J. 1, 23 (2004). A fee enhancement is not necessarily automatic in every case and may be denied to a successful litigant. See Gallo, 290 N.J. Super. at 660 ("Nowhere does [Rendine] say that a fee enhancement multiplier must be awarded in every case.").

Plaintiff asks for an enhancement of 50%. At most defendant proposes an enhancement of 5%. The Court decides a mid-range enhancement of 25% or $31,803.75 on the $127,215 lodestar is appropriate. Counsel deserves an enhancement because he achieved an excellent result and he undertook to represent plaintiff in this civil rights case without an assurance that he would be paid.[13] Further, the Court considers an enhancement necessary in order to incentivize competent counsel to represent plaintiffs such as Andujar who do not present unduly large damage claims.

---

[13] The Court disagrees with defendant's argument that counsel's "Fee Agreement explicitly guaranteed counsel payment[.]" July 17, 2018 LB at 12. If plaintiff did not succeed at trial or settle the case, plaintiff would not be paid any fee.

Without the prospect of a potential high fee, the Court is concerned that hourly or relatively low salaried workers may not obtain the skilled representation they deserve. Competent counsel should not only represent those with largesse. See Norman v. Haddon Township, C.A. No. 14-6034 (NLH/JS), 2018 WL 3536752, at *4 (D.N.J. July 23, 2018). While the Court believes plaintiff is entitled to an enhancement, it need not be excessive. This was not an unduly complex case. Nor did counsel spend an inordinate amount of time on the case. It is unlikely plaintiff's counsel had to forego potentially lucrative work on account of his handling of this case.

Counsel makes much of the fact he will pay a referral fee in the case. To be blunt, this is irrelevant to the Court's decision. Plaintiff's referral fee is a cost counsel voluntarily incurred and need not be compensated by defendant. Counsel's referral fee is a "cost of doing business" and does not factor into the reasonable fee defendant has to pay. The net fee payable to plaintiff's counsel is not what is at issue when the Court calculates counsel's statutory fee award. What is paramount is whether the total Court award is reasonable. The amount of the statutory fee award should not be dependent on how plaintiff allocates his fee. It is axiomatic that a Court awarded fee must be reasonable. North Bergen Rex Transport v. TLC, 158 N.J. 561, 570 (1999). The reasonableness

of an attorney fee award is measured by the factors in RPC 1.5(a). <u>Litton Industries, Inc. v. IMO Industries, Inc.</u>, 200 N.J. 372, 386-87 (2009). The fact that counsel has to pay a referral fee is not a relevant factor under RPC 1.5(a).[14]

6. <u>Costs</u>

Under the NJLAD plaintiff is entitled to reimbursement of his reasonable costs for his successful prosecution of the case. N.J.S. 10:5-27.1. Plaintiff's motion seeks $1,453.90 in costs itemized as follows:

| Description | Rate |
|---|---|
| Complaint | $250.00 |
| 6/24/16 Telephone conference AT&T | 6.89 |
| A+ Certified Reporting | 708.90 |
| Pacer Service Center | 12.30 |
| Subpoena | 55.00 |
| Carol Farrell, CRR, RMR | 420.00 |
| Total Reimbursable Expenses | $1,453.09 |

Plaintiff's Amended Affidavit seeks an additional $369.90 in Court Reporter costs (Doc. No. 78, Exhibit J). Thus, plaintiff asks for a total cost reimbursement of $1,823.80.

Defendant opposes plaintiff's application for costs on the ground plaintiff failed to provide the required documentation to substantiate his claim. Opp. at 17. The Court disagrees. <u>See</u> Doc. Nos. 67-6, 76, 78. Defendant argues plaintiff should not be reimbursed the cost to subpoena Christian Gosseaux to testify at

---

[14] The Court deems it appropriate to only base counsel's enhancement on the lodestar and not also on the other items to be awarded that are discussed in this Opinion.

trial. Again, the Court disagrees and rules it was necessary for plaintiff to subpoena Gosseaux. Plaintiff already retained his subpoena service to serve Gosseaux before defense counsel offered to voluntarily produce him at trial. Counsel represents there was no time or opportunity to stop the subpoena service from moving forward for a cost already incurred. See Amended Affidavit ¶22. Under these circumstances, the cost to serve Gosseaux should be reimbursed. Thus, the Court approves plaintiff's application for costs in the amount of $1,823.80.

      7.   <u>Prejudgment Interest</u>

It is well established that plaintiff is entitled to prejudgment interest on his successful NJLAD claim. <u>Gallo</u>, 299 N.J. Super. 661. The Court rejects defendant's argument that plaintiff's application for interest should be denied because he failed to present proofs at trial that he attempted to mitigate his damages. Opp. at 19. To the contrary, the Court has already held that plaintiff presented this evidence. 2018 WL 1087494, at *11-12. In addition, as the Court wrote when it denied defendant's motion for a new trial, it is defendant's burden to prove plaintiff failed to mitigate his damages; it is not plaintiff's burden to prove he mitigated his damages. The verdict in the case demonstrates the jury found defendant did not satisfy its burden. <u>Id.</u> at *11-13. The Court also notes that a plaintiff's failure to mitigate damages alone, which did not

occur in the case, is insufficient to overcome the presumption in favor of a prejudgment interest award. <u>Booker v. Taylor Milk Co., Inc.</u>, 64 F. 3d 860, 869 (3d Cir. 1995).[15]

Although plaintiff is entitled to prejudgment interest, defendant correctly points out interest is not available on plaintiff's entire award. Prejudgment interest is not awarded for future lost wages. <u>Gallo</u>, 290 N.J. Super. at 662. In addition, prejudgment interest will not be added to plaintiff's emotional distress award. <u>See</u> <u>Milazzo v. Exxon Corp.</u>, 243 N.J. Super. 573, 577 (Law Div. 1990)("[T]he purpose of prejudgment interest is not punitive but rather compensatory in nature to indemnify plaintiff for the loss of moneys which could have been earned if the payment had not been delayed and which defendants had the use thereof.").

Thus, plaintiff is entitled to prejudgment interest on his back pay award of $123,926.00. The Court accepts defendant's calculation that this amount through October 2017 is $1,207.64.[16]

8.  <u>Negative Tax Consequences</u>[17]

---

[15] Aside from its mitigation argument, defendant has not argued that any other exceptional circumstance exists to justify the suspension of prejudgment interest.

[16] Counsel's contingent fee "shall not be computed on the interest" included in the judgment. N.J.R. 4:42-11(b).

[17] As the parties know, the parties have spent substantial time addressing the <u>Ferrante</u> issue discussed <u>infra</u>. After the parties' first round of expert affidavits were served, the Court asked for supplemental submissions to address the impact of the recent tax changes. All parties have unquestionably had a full and fair opportunity to address the <u>Ferrante</u> issue.

In Ferrante v. Sciaretta, 365 N.J. Super. 601, 603 (Law Div. 2003), the court held that a plaintiff is entitled to be compensated for the negative tax consequences of receiving a lump sum award in employment discrimination actions. Accord Quinlan v. Curtis-Wright Corp., 409 N.J. Super. 193, 218 (App. Div. 2009); Montone v. City of Jersey City, C.A. Nos. 06-280 (SRC), 06-3790 (SRC), 2018 WL 3536093 (D.N.J. July 23, 2018). Plaintiff seeks this compensation. The Court agrees with defendant, however, that "any such additional award is restricted to the difference between the tax bracket that the employee was in at the time of employment and the higher tax bracket the employee was placed into as [a] result of the lump sum award." Opp. at 21.

Contrary to defendant's argument, the Court finds defendant was put on fair notice that plaintiff would make a Ferrante claim. See Plaintiffs Motion, Exhibit G (Plaintiff's Answers to Interrogatories). The Court rejects defendant's argument that plaintiff's notice "was buried in the general objections portion of Plaintiff's Answers to Interrogatories." Opp. at 23. Plaintiff's notice was plain and obvious. In addition, although a Ferrante claim was not specifically listed in the Joint Final Pretrial Order ("JFPTO"), it is not clear this was required. If it was required, the Court deems the JFPTO amended to prevent manifest injustice to plaintiff. At all relevant times defendant

knew or should have known plaintiff was making a <u>Ferrante</u> claim. In addition, defendant has not been prejudiced by plaintiff's failure to specifically mention the claim in the JFPTO. Under these circumstances, it would be a miscarriage of justice to deny plaintiff relief to which he is entitled as a successful NJLAD plaintiff.[18]

Plaintiff's <u>Ferrante</u> claim is supported by the affidavits of William Martini, Jr., CPA. [Doc. Nos. 67, Exhibit G, 78 Exhibit K]. Martini opines plaintiff will suffer a negative tax of $69,443.00 after payment of the verdict. Martini opines the entire award of $258,926.00 is taxable and assumes plaintiff will earn the same amount as he did in 2016. In opposition to Martini's calculation, defendant submitted the affidavit of Robert P. Lynch, CPA.[19] Lynch concluded the negative tax is $29,650.00.

The primary difference in the calculations of Martini and Lynch appears to be that Lynch did not include the amount of plaintiff's award for future pay and emotional distress when he calculated plaintiff's tax. Lynch did not consider plaintiff's

---

[18] Similarly, the Court rejects defendant's argument that plaintiff's <u>Ferrante</u> claim should be denied because plaintiff did not identify his <u>Ferrante</u> expert before trial. Opp. at 24. Since plaintiff's <u>Ferrante</u> claim was not ripe until after a verdict was returned in plaintiff's favor, it was not appropriate to identify an expert until after the trial verdict was returned.

[19] The Court concludes Martini and Lynch are qualified CPA's to perform a <u>Ferrante</u> analysis.

future pay award because that was what he was told by defense counsel. Lynch Aff. ¶5. However, no case law is cited to support this position. In fact, the case law defendant relies upon says exactly the opposite. O'Neill v. Sears, Roebuck and Company, 108 F. Supp. 2d 443, 447 (E.D. Pa. 2000)(front pay should be considered when calculating the negative tax consequences of a jury award in an age discrimination case). It makes logical sense that if the purpose of a Ferrante award is to compensate plaintiff for moving into a higher tax bracket, the amount of plaintiff's future pay award should be considered. After all, the award will be taken into account in computing plaintiff's tax bracket. Defendant does not argue plaintiff does not have to pay taxes on the front pay award.

Another difference in the Martini and Lynch affidavits is that Lynch did not include plaintiff's emotional distress award in his computation but Martini did. In this instance Lynch is correct. Compensatory damages such as those for emotional distress should not be included in the negative tax calculation. As noted in O'Neill:

> The compensatory and liquidated damages, however, are only a product of this lawsuit. [Plaintiff] would not have received these sums but for the defendant's discriminatory action. Hence, allowing the plaintiff to recover the increased tax he will have to pay on these sums does more than make him whole. It gives the plaintiff a windfall.

Id. at 448 (emphasis in original).

Thus, it appears the Court has not been presented with a correct negative tax calculation.[20] Plaintiff incorrectly assumes his entire award should be taken into account when calculating the negative tax when only plaintiff's front and back pay awards should be considered. On the other hand, defendant incorrectly omits the front pay award in its calculation. In addition, the parties' experts did not have the benefit of this Opinion when they did their calculations. Rather than doing its own calculation of plaintiff's negative tax consequences, the Court leaves it to the parties to agree on the correct amount.[21]

9.  <u>Motion to Strike Plaintiff's Counsel's Amended Affidavit</u>

Defendant's request to strike the amended affidavit of plaintiff's counsel is denied. Plaintiff's motion for attorney's fees was originally supported only by Mr. Pescatore's Certification [Doc. No. 67-1]. After defendant opposed plaintiff's motion Mr. Pescatore served a more detailed affidavit [Doc. No. 76]. After defendant raised objections to the substance of the affidavit [Doc. No. 77], the affidavit was amended [Doc. No. 78]. Defendant seeks to strike the amended affidavit because: (1) it is not sufficiently detailed, (2) the

---

[20] To the extent defendant argues plaintiff's calculation or methodology is not sufficiently detailed or is otherwise flawed, the Court disagrees. Martini set out in sufficient detail how he did his calculations.
[21] The Court will get involved only if the parties cannot agree on the correct amount.

affidavit is not based on personal knowledge and admissible facts, (3) counsel has failed to supply proof of his referral agreement, and (4) the affidavit contains argument in violation of the Federal and Local Rules of Civil Procedure.

The Court has reviewed plaintiff's affidavit in detail and discounts defendant's arguments. Plaintiff's counsel has supplied sufficient detail to enable the Court to decide plaintiff's application for relief. In addition, to the extent there are any missing details in the amended affidavit, the Court has taken this into account in its ruling. If any argument exists in counsel's affidavit, it has been ignored. Further, any issues regarding plaintiff's referral fee is a "red-herring." As discussed, the referral fee is irrelevant to the Court's decision. Importantly, defendant has been given every reasonable opportunity to respond to plaintiff's affidavits. All of defendant's requests to submit additional responsive affidavits and briefs have been granted.

For the sake of completeness, the Court denies all of defendant's requests to strike plaintiff's supplemental submissions, including the supplement briefs and affidavits of Mr. Pescatore and William Martini (plaintiff's negative tax consequences expert). Most of these submissions were directly relevant to the issues addressed by the Court. Further, all of the submissions were made before oral argument was held.

Importantly, defense counsel acknowledged he had an opportunity to respond to all of plaintiff's submissions.[22] To the extent plaintiff's submissions may not have been technically permitted by the Local Rules of Civil Procedure, plaintiff's transgressions are excused. See L. Civ. R. 83.2(b)("Unless otherwise stated, any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice.").[23] The Court's indulgence is consistent with the Third Circuit's aversion to the exclusion of important evidence. See Love v. Rancocas Hospital, C.A. No. 01-5456 (JEI), 2005 WL 6011252, at *1 (D.N.J. March 31, 2005).

Conclusion

For the foregoing reasons, plaintiff's motion for fees, costs, prejudgment interest and negative tax consequences is granted. The Court's ruling results in the following distribution. The total judgment in the case is $258,926.00. Plaintiff's counsel is awarded a total fee (including enhancement) of $159,018.75 ($127,215 plus $31,803.75) and costs in the amount of $1,823.80.[24] Plaintiff is entitled to be paid the judgment of $258,926.00, plus $1,207.64 in prejudgment

---

[22] Defense counsel stated: "Your Honor, the Court gave us every opportunity to put the arguments that we feel we need to put in the record, and I think that our papers are complete." Tr. at 3:24 to 4:1.

[23] Defendant has been given the same leeway as plaintiff.

[24] For the purpose of calculating plaintiff's 45% contingent fee, the Court did not include an amount for negative tax consequences.

interest and an amount to be determined for negative tax consequences. All of these amounts shall be paid by defendant if its appeal is not successful. The following Order consistent with this Opinion shall be entered.

ORDER

For all the foregoing reasons, IT IS HEREBY ORDERED this 20th day of August, 2018, that plaintiff's Motion for Attorney's Fee, Costs, [Prejudgment Interest] and Negative Tax Consequences [Doc. No. 67] is GRANTED in part and DENIED in part; and it is further

ORDERED as follows:

1.   Plaintiff is awarded $127,215 in attorney's fees;

2.   Plaintiff is awarded an enhancement of 25% or $31,803.75.

3.   Plaintiff is awarded $1,823.80 in costs;

4.   Plaintiff is awarded $1,207.64 in prejudgment interest; and

5.   Plaintiff is awarded negative tax consequences in an amount to be determined consistent with this Opinion; and it is further

ORDERED that defendant's Motion to Strike the Amended Reply Affidavit of Plaintiff's Counsel [Doc. No. 81] is DENIED; and it is further

ORDERED that this Order is entered without prejudice to plaintiff's right to file a supplemental request for fees and costs (as well as interest and negative tax consequences) incurred after March 13, 2018, the last date this Opinion and Order addresses. The supplemental filing, if any, shall be filed consistent with the applicable Local and Federal Rules of Civil Procedure and not before the Third Circuit rules on defendant's appeal. This Order is also entered without prejudice to plaintiff's right to seek fees for his appellate work if defendant's appeal to the Third Circuit is not successful; and it is further

ORDERED that plaintiff's enforcement of this award is STAYED until after the Third Circuit rules on defendant's appeal.

                                        s/Joel Schneider
                                        JOEL SCHNEIDER
                                        United States Magistrate Judge

Dated: August 20, 2018